IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

**RODNEY HAYES,**

    Petitioner,

v.                                            Civil Action No. 3:14cv91
                                                    (Judge Groh)

**WARDEN, FCI GILMER,**

    Respondent.

## REPORT AND RECOMMENDATION

### I. Procedural History

On August 15, 2014, the *pro se* petitioner, an inmate incarcerated at FCI Gilmer in Glenville, West Virginia, filed a combined petition for writ of habeas corpus pursuant to 28 U.S.C. §2241 and for sentence reduction pursuant to 18 U.S.C. §3621. In response to a Notice of Deficiency, petitioner paid his $5.00 filing fee on September 12, 2014. After a September 15, 2014 Show Cause Order, filed his court-approved form petition on September 16, 2014, along with an Objection and Protest Over Usage of Court Form Petition.

On September 17, 2014, the respondent was directed to show cause why the petition should not be granted. On October 15, 2014, the respondent filed a Motion to Dismiss or for Summary Judgment and Response to Order to Show Cause. Because petitioner was proceeding *pro se,* on October 20, 2014, the Court issued a Roseboro Notice. The Notice was sent via certified mail, return receipt requested. On December 8, 2014, after a review of the docket revealed that the return receipt for the Roseboro Notice had never been returned, the *pro se* law clerk checked the United States Postal Service's online tracking and determined that the Roseboro Notice never arrived at FCI Gilmer; its last documented location was in Charleston, West Virginia on October 23, 2014. Accordingly, the Roseboro Notice was re-sent to the petitioner, again via certified mail, return receipt

requested. A review of the docket indicates it was accepted at FCI Gilmer on December 11, 2014. The petitioner has never filed a response.

This matter is before the undersigned for a report and recommendation pursuant to LR PL P 2.

## II. Background

The petitioner was convicted in the Eastern District of Wisconsin of Conspiracy to Distribute 5 Kilograms of Cocaine,[1] in violation of 21 U.S.C. §846. On January 19, 2012, he was sentenced to a 110-month term of imprisonment, to be followed by five years of supervised release. His current good conduct projected release date is February 6, 2018.[2]

While incarcerated at FCI Elkton in early 2014, petitioner was found to be eligible to participate in the Residential Drug Abuse Treatment Program ("RDAP").[3] Subsequently, after petitioner's information was reviewed by the Designation and Sentence Computation Center ("DSCC"), petitioner was found to be precluded from early release consideration under 28 C.F.R. §550.55(b)(4), because of a prior state robbery conviction.[4]

## III. Contentions of the Parties

### A. The Petitioner's Contentions

Petitioner contends that the BOP erroneously determined that pursuant to 18 U.S.C. §3621(e), he was not entitled to RDAP's 9-12 month sentence reduction because of a prior state court conviction for a robbery committed on January 10, 1994. He argues that the BOP's decision does not comport with its obligations under the Administrative Procedure Act[5] ("APA"), because the

---

[1] Petitioner's criminal case number in the E.D. of Wisconsin is 2:09-cr-00271-LA-2.

[2] Dkt.# 14-1, ¶4 at 2.

[3] Dkt.# 14-1, ¶7 at 2.

[4] Dkt.# 14-4 at 3.
[5] 5 U.S.C. §§551-559, 701-706.

2

administrative record "is devoid of any . . . rationale for the BOP's promulgation of a rule . . . categorically excluding inmates with certain prior convictions from early release eligibility."[6] Finally, he argues that because in some areas of the BOP's jurisdiction, notably, the 9th Circuit, any prisoner who completes the RDAP program is eligible for a sentence reduction, regardless of his/her criminal history, here, the BOP's decision to exclude him from early release because of his geographic location violates his due process and equal protection rights.

Petitioner admits he did not seek relief through the BOP's administrative remedy process because it "would prove futile."

For relief, he seeks a "lateral transfer" to a federal prison within the jurisdiction of the 9th Circuit, and early release under RDAP.

## B. Respondent's Motion to Dismiss or for Summary Judgment

The respondent argues that the complaint should be dismissed or summary judgment granted in its favor, because

    1) petitioner has failed to exhaust his administrative remedies;

    2) petitioner is precluded from early release consideration because of his 1994 state court conviction for robbery;

    3) the BOP did not violate the APA in excluding inmates such as petitioner from consideration for early release, if they have past convictions for crimes such as robbery;

    4) petitioner's equal protection argument fails because he has not been treated any differently than any other similarly-situated inmate; and

    5) petitioner's request for transfer to another prison is not cognizable in a habeas corpus petition.

## IV. Standard of Review

### A. Motion to Dismiss

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding facts, the merits of a claim, or the applicability of defenses."

---

[6] Dkt.# 8 at 10.

Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir. 1992) (citing 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1356 (1990)). In considering a motion to dismiss for failure to state a claim, a plaintiff's well-pleaded allegations are taken as true and the complaint is viewed in the light most favorable to the plaintiff. Mylan Labs, Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir. 1993); see also Martin, 980 F.2d at 952.

The Federal Rules of Civil Procedure "require only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). Courts long have cited the "rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of [a] claim which would entitle him to relief." Conley, 355 U.S. at 45-46. In Twombly, the United States Supreme Court noted that a complaint need not assert "detailed factual allegations," but must contain more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action." Conley, 550 U.S. at 555 (citations omitted). Thus, the "[f]actual allegations must be enough to raise a right to relief above the speculative level," (Id.). (citations omitted), to one that is "plausible on its face," (Id. at 570), rather than merely "conceivable." (Id). Therefore, in order for a complaint to survive dismissal for failure to state a claim, the plaintiff must "allege facts sufficient to state all the elements of [his or] her claim." Bass v. E.I. DuPont de Nemours & Co., 324 F.3d 761, 765 (4th Cir. 2003) (citing Dickson v. Microsoft Corp., 309 F.3d 193, 213 (4th Cir. 2002); Iodice v. United States, 289 F.3d 279, 281 (4th Cir. 2002)). In so doing, the complaint must meet a "plausibility" standard, instituted by the Supreme Court in Ashcroft v. Iqbal, where it held that a "claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009). Thus, a well-pleaded complaint

4

must offer more than "a sheer possibility that a defendant has acted unlawfully" in order to meet the plausibility standard and survive dismissal for failure to state a claim. (Id).

When a motion to dismiss pursuant to Rule 12(b)(6) is accompanied by affidavits, exhibits and other documents to be considered by the Court, the motion will be construed as a motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure.

**B.  Motion for Summary Judgment**

Under the Federal Rules of Civil Procedure, summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories and admission on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c).  In applying the standard for summary judgment, the Court must review all the evidence "in the light most favorable to the nonmoving party." Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).   The Court must avoid weighing the evidence or determining the truth and limit its inquiry solely to a determination of whether genuine issues of triable fact exist. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

In Celotex, the Supreme Court held that the moving party bears the initial burden of informing the Court of the basis for the motion and of establishing the nonexistence of genuine issues of fact. Celotex at 323.  Once "the moving party has carried its burden under Rule 56, the opponent must do more than simply show that there is some metaphysical doubt as to material facts." Matsushita Electric Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  The nonmoving party must present specific facts showing the existence of a genuine issue for trial. Id.  This means that the "party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials of [the] pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." Anderson at  256. The "mere existence of a scintilla of evidence" favoring the non-moving party will not prevent the entry of summary judgment. Id. at 248.  Summary

judgment is proper only "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." Matsushita, at 587 (citation omitted).

## V. Analysis

### A. Exhaustion of Administrative Remedies

According to the Prison Litigation Reform Act ("PLRA"), a prisoner filing an action under any federal law must first exhaust all available administrative remedies. Title 42 U.S.C. §1997(e)(a); Marshall v. Mouse, 2011 WL 3627102 (N.D. W.Va. 2011). The Supreme Court, addressing the exhaustion issue under Section 1997(e)(a), has determined that exhaustion under the Act is mandatory and "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes," and further, that exhaustion is required, even when the relief sought is not available. Porter v. Nussle, 534 U.S. 516, 524 (2002) citing Booth v. Turner, 532 U.S. at 740, 741 (2001); see also, Anderson v. XYZ Correctional Health Servs.,Inc., 407 F.3d 674, 677 (4th Cir. 2005). In Woodford v. Ngo, 548 U.S. 81, 84 (2006), the United States Supreme Court found that the PLRA's exhaustion requirement serves three main purposes: (1) to "eliminate unwarranted federal court interference with the administration of prisons"; (2) to "afford corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case;" and (3) to "reduce the quantity and improve the quality of prisoner suits." Therefore, "the PLRA exhaustion requirement requires *full* and *proper* exhaustion." Id. at 92 - 93 (emphasis added). Full and proper exhaustion under the PLRA requires a plaintiff to strictly comply with "all the time and procedural requirements of the prison grievance system." Id., at 93-94 (internal citations omitted). Because exhaustion is a prerequisite to suit, all available administrative remedies must be exhausted *prior to* filing a complaint in federal court. See Porter, 534 U.S. at 524 (citing Booth, 532 U.S. at 741) (emphasis added). Moreover, an inmate may procedurally default his claims by failing to follow the proper procedures. See Woodford, *supra* at 92 - 93 (recognizing the PLRA provisions contain a procedural default component).

The Bureau of Prisons has established a three-tier Administrative Remedy Procedure, set forth in Title 28 of the Code of Federal Regulations, for the formal review of complaints filed by inmates relating to the conditions of their confinement. Title 28 C.F.R. §542.10, *et seq*. Under this system, an inmate must first request an informal resolution by presenting an issue of concern informally to a staff member. Title 28 C.F.R. §542.13(a). If the informal resolution fails, or if an inmate is dissatisfied with the informal response, or if there is *no* response, the inmate may then submit a Request for Administrative Remedy, in the form of a formal written complaint, on the proper form (a BP-9), to the Warden of the institution within twenty (20) calendar days of the date of the incident upon which the complaint is based. Title 28 C.F.R. §542.14(a). If the inmate's request is denied, or if the inmate is dissatisfied with the Warden's response, or if there is no response from the Warden within twenty (20) days, the inmate may file an appeal with the appropriate Regional Office, using the appropriate form (a BP-10), within twenty (20) calendar days of the Warden's response or the date the response would have been due. Title 28 C.F.R. §§542. 18; 542.15(a). If the Regional Office denies relief, the inmate completes the administrative remedy process by appealing the decision to the Office of General Counsel, or the "Central Office," in Washington, D.C., using the appropriate form (a BP-11), within thirty (30) calendar days of the date the Regional Director signed the response. Id. The General Counsel's written response to the inmate's appeal is the final decision of the administrative remedy process, and an inmate is not deemed to have exhausted his or her administrative remedies until the request has been filed and acted upon at all the required agency levels. Id.

Despite the fact that the Supreme Court has stated that it "will not read futility or other exceptions into statutory exhaustion requirements . . . ," see Booth v. Churner, 532 U.S. at 741, n. 6, several courts have found that the mandatory exhaustion requirement may be excused in certain limited circumstances. See Mitchell v. Horn, 318 F.3d 523, 529 (3rd Cir. 2003) (summary dismissal for failure to exhaust not appropriate where prisoner was denied forms necessary to complete

7

administrative exhaustion); Ziemba v. Wezner, 366 F.3d 161 (2nd Cir. 2004) (defendant may be estopped from asserting exhaustion as a defense, where the defendant's actions render the grievance procedure unavailable); Aceves v. Swanson, 75 Fed. Appx. 295, 296 (5th Cir. 2003) (remedies are effectively unavailable where prison officials refuse to give inmate grievance forms upon request); Miller v. Norris, 247 F.3d 736, 740 (8th Cir. 2001) (a remedy is not available within the meaning of § 1997e(a) when prison officials prevent a prisoner from utilizing such remedy); Dotson v. Allen, 2006 WL 2945967 (S.D. Ga. Oct. 13, 2006) (dismissal for failure to exhaust not appropriate where plaintiff argues that failure to exhaust was direct result of prison official's failure to provide him with the necessary appeal forms).

Here, the facts are not in dispute. The petitioner admits that he did not attempt to exhaust his administrative remedies because he believed it would be futile, because he was told "the courts were the only ones that could change the institution policy[;]"[7] the respondent concurs that petitioner not only did not exhaust his instant claims, but that in all the time petitioner has been incarcerated, he has never filed any administrative remedy on any matter.[8]

Nevertheless, recognizing that the PLRA mandates the exhaustion of administrative remedies and similar principles have been applied in habeas corpus actions, the requirements of the PLRA are applicable to civil suits in which a prisoner challenges the conditions of his confinement, not habeas proceedings challenging the execution of a sentence under 28 U.S.C. §2241. See LaRue v. Adams, 2006 WL 1674487 *5 - *7 (S.D. W.Va. June 12, 2006) (citing Smith v. Angelone, 111 F.3d 1126, 1129-31 (4th Cir. 1997) cert. denied, 521 U.S. 1131 (1997)).[9]

---

[7] Dkt.# 8 at 7.

[8] Dkt.# 14-1, ¶6 at 2.

[9] In LaRue, the Southern District of West Virginia noted that the purpose of the PLRA was to curtail the filing of frivolous prisoner civil rights actions. LaRue, 2006 WL 1674487 at *7. In addition, the Court found it significant that Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) nearly simultaneously with the PLRA and that under the AEDPA, Congress established separate procedures for addressing abusive habeas filings. Id. Moreover, the Court found that habeas actions were not typical civil actions, because they involve someone's liberty,

Moreover, to the extent that exhaustion has been applied to habeas corpus, such a requirement is not mandated by statute. Instead, exhaustion prerequisites in habeas corpus actions arising under §2241 are merely judicially imposed. Because the exhaustion requirement is only judicially imposed in habeas proceedings, it follows that a Court has the discretion to waive that requirement in certain circumstances. See Larue at *8 (recognizing that several circuit and district courts have found that the exhaustion requirements may be waived under §2241 and noting that although the Fourth Circuit has not directly addressed this issue, it has shown a willingness to adopt a futility exception to the general exhaustion requirement in habeas corpus actions).

In this matter, the case has been filed; the respondent has filed its dispositive motion; the matter is ripe for review. Therefore, to dismiss this case for the failure to exhaust at this juncture of the litigation would be a waste of judicial time and resources. Accordingly, the undersigned recommends that exhaustion be waived and this case proceed to a determination on the merits. However, even if petitioner were not required to exhaust administrative remedies before bringing this action, his claim is nonetheless without merit and should be denied.

**B. Petitioner's Eligibility for Early Release Under RDAP**

The Violent Crime Control and Law Enforcement Act of 1994 amended 18 U.S.C. §3621 to require the BOP to "make available appropriate substance abuse treatment for each prisoner the Bureau determines has a treatable condition of substance addiction or abuse." 18 U.S.C. § 3621(b). The Act is applicable to persons convicted of a "nonviolent offense" and allows the BOP to reduce a prisoner's sentence by up to one year as an incentive for the successful completion of the program. See 18 U.S.C. §3621(e)(2)(B); see also 28 C.F.R. §550.58. Initially, a Drug Abuse Program

---

rather than claims of mere civil liability. Id. The Southern District cited several other district and circuit court cases that have also come to the conclusion that the PLRA and its exhaustion requirements are not applicable to habeas corpus proceedings. Id. (listing cases). The undersigned agrees with the reasoning of the Southern District of West Virginia and finds that a prisoner's challenge to the execution of his sentence under §2241 is not subject to the PLRA's exhaustion requirements. See also: Sewell v. Carter, (N.D. W.Va. Dkt.# 20 and 22)(1:13cv120); Hunter v. O'Brien, (N.D. W.Va. Dkt.# 33 and 37)(5:12cv101).

Coordinator ("DAPC") decides whether a prisoner qualifies to participate in the RDAP and is eligible for the sentence reduction. After that initial determination of eligibility, in accordance with BOP Program Statement 5331.02, the DAPC will request a review of the inmate's current offense and prior convictions from DSCC's legal staff.[10] Inmates may be deemed ineligible for early release if they are found to have felony convictions for any offense that has as an element the actual, attempted, or threatened use of physical force against the person or property of another, or an offense that involved the carrying of, possession, or use of a firearm or other dangerous weapon, during the commission of a crime.[11] Robbery is one of the specified crimes.[12]

Setting aside for the moment the fact that it is unclear from the pleadings whether petitioner has actually completed the RDAP program,[13] even if he has, despite his argument to the contrary, his due process rights have not been violated, because §3621(e) simply does not create an *entitlement* to early release. See Orr v. Hawk, *supra* (there is no protectible liberty interest in early release under §3621(e)); Fonner v. Thompson, 955 F. Supp. 638 (N.D. W.Va. 1997) (same); see also O'Bar v. Pinion, 953 F.2d 74, 84 (4th Cir. 1991) (a statute that creates only a hope about a future discretionary decision by prison administrators is too speculative to create a liberty interest). Moreover, petitioner's own pleadings actually acknowledge his understanding that participation in the program did not entitle him to automatic early release: he asserts that "[o]nce an inmate completes the residential drug abuse treatment program, he *may be* eligible for early release[.]"[14]

---

[10] See 18 U.S.C. §3621(e), §7.b, Early Release Procedures.

[11] 28 CFR §550.55(b)(5).

[12] 28 CFR §550.55(b)(4)(iii).

[13] The original petition states it was filed it "for the awarding of the sentence reduction once [he] . . . completes the RDAP program." Dkt.# 1 at 5. Elsewhere, petitioner implies that at least at the time he filed his petition and the later court-approved form petition, he had not yet completed the RDAP program. Dkt.# 8 at 10.

[14] Dkt.# 8 at 11 (emphasis added).

Further, even assuming petitioner has completed the RDAP program, petitioner is statutorily ineligible for early release by virtue of his prior state conviction for Aggravated Robbery. A March 6, 2014 Prior Offense Review of petitioner's criminal record by the DSCC legal department, found that he was precluded from receiving a §3621(e) early release, pursuant to 28 C.F.R. §550.55(b), because of his conviction in violation of 720 Ill. Comp. Stat. §5/18-1.[15] While "[w]hile eligibility for early release under §3621(e)(2)(B) is open to all prisoners who meet the statutory requirements," the statute expressly vests the BOP with broad discretion to grant or deny sentence reductions to eligible prisoners. See 18 U.S.C. § 3621(e)(2)(B) ("the period a prisoner convicted of a nonviolent offense remains in custody after successfully completing a treatment program *may be reduced* by the Bureau of Prisons") (emphasis added) Pelissero v. Thompson, 170 F.3d 442, 444 (4th Cir. 1999); see also Lopez v. Davis, 531 U.S. 230, 244 (2001)(the BOP "has the authority, but not the duty . . . to reduce [a prisoner's] term of imprisonment."). Merely because petitioner was initially deemed eligible for RDAP after his February 11, 2014 clinical interview does not mean he was assured an early release through RDAP. Such forms are merely an assessment of an inmate's eligibility for the program and do not create any enforceable rights for the inmate. See Royal v. Trombone, 141 F.3d 596 (5th Cir. 1998).

Relief should be denied.

**C. Equal Protection**

---

[15] Petitioner was convicted of Aggravated Robbery, in violation of Ill. Comp. Stat. §5/18-1, which states in pertinent part: "Sec. 18-1. Robbery; aggravated robbery. (a) Robbery. A person commits robbery when he or she knowingly takes property, except a motor vehicle covered by Section 18-3 or 18-4 [720 ILCS 5/18-3 or 720 ILCS 5/18-4], from the person or presence of another by the use of force or by threatening the imminent use of force. (b) Aggravated robbery. (1) A person commits aggravated robbery when he or she violates subsection (a) while indicating verbally or by his or her actions to the victim that he . . . is presently armed with a firearm or other dangerous weapon, including a knife, club, ax, or bludgeon. This offense shall be applicable even though it is later determined that he . . . had no firearm or other dangerous weapon, including a knife, club, ax, or bludgeon, in his . . . possession when he . . . committed the robbery. (2) A person commits aggravated robbery when he . . . knowingly takes property from the person or presence of another by delivering (by injection, inhalation, ingestion, transfer of possession, or any other means) to the victim without his or her consent, or by threat or deception, and for other than medical purposes, any controlled substance."

The Equal Protection Clause of the Fourteenth Amendment provides that "[n]o State shall … deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. Amend. XIV, §1.

To be successful on an equal protection claim, a plaintiff must demonstrate "that he has been treated differently from others with whom he is similarly situated and that the unequal treatment was the result of intentional or purposeful discrimination." Morrison v. Garraghty, 239 F. 3d 648, 654 (4th Cir. 2001). First, the inmate must produce evidence to show that he was treated differently than other similarly situated inmates. See Durso v. Rowe, 579 F.2d 1365, 1371 (7th Cir. 1978). Next, the inmate must show that he was intentionally singled out for harsher treatment. See Brandon v. District of Columbia Bd. of Parole (I), 734 F.2d 56, 60 (D.C. Cir. 1984); Stringer v. Rowe, 616 F.2d 993, 998 (7th Cir. 1980). Finally, if the inmate was purposefully singled out, the analysis can proceed on either of two routes. First, if the inmate can show that the prison's motivation in effecting its differential treatment implicates a suspect classification or a fundamental right, then the Court must strictly scrutinize the prison's actions. See O'Bar, 953 F.2d at 81-82. The prison must show that the classification is narrowly tailored to a compelling governmental interest. Id. If the prison's reason for the differential treatment does not implicate a suspect class or a fundamental right, the analysis takes the second path. See Brandon (I), 734 F.2d at 60, Brandon v. District of Columbia Bd. of Parole (II), 823 F.2d 644, 650 (D.C. Cir. 1987). On this path, the differential treatment is subject only to rational basis review. See O'Bar, 953 F.2d at 81-82. A rational basis review requires that the government's decision to treat similarly situated individuals differently bear some rational relationship to a legitimate State purpose. See id. at 81; Brandon (I), 734 F.2d at 60; Brandon (II), 823 F.2d at 650.

Here, petitioner appears to be attempting to allege that the BOP has violated his right to Equal Protection because inmates incarcerated within the ambit of the Ninth Circuit Court of

Appeals' jurisdiction who complete the RDAP program are treated differently,[16] due to the BOP's recognition of the "Arrington" decision.[17] He contends that the BOP's decision to preclude his early release fails to comport with its obligations under the APA to "articulate its rationale for exercising such discretion[,]" because, like in Crickon,[18] the record does not provide any rationale for "categorically excluding inmates with certain prior convictions" from eligibility for early release.[19]

In Lopez v. Davis, 531 U.S. 230 (2001), the United States Supreme Court determined that the BOP did not abuse its discretion in promulgating Section 550.58 (1997 regulation) because the BOP "reasonably concluded that an inmate's prior involvement with firearms, in connection with the commission of a felony, suggest his readiness to resort to life-endangering violence." Lopez v. Davis, 531 U.S. 230, 244, 1 (2001)("[T]he Bureau may categorically exclude prisoners based on their preconviction conduct . . ."). Effective March 16, 2009, 28 C.F.R. §550.58 was modified slightly and redesigned as 28 C.F.R. §550.55. Section 550.55 is essentially identical to Section 550.58, but contains a detailed rationale as to why inmates who have been convicted of carrying, possessing, or using a firearm in connection with a drug trafficking offense are ineligible for consideration for early release. See Hicks v. Federal Bureau of Prisons, 603 F.Supp.2d 835 (D.S.C. 2009) (When applying Section 550.55, Petitioner's APA challenge fails because the new regulation merely clarifies the BOP's position), *aff'd,* 358 Fed.Appx. 393 (4th Cir. 2009), *cert. denied*, ___ U.S. ___, 130 S.Ct. 3442 (2010); see also Holland v. Federal Bureau of Prisons, 2009 WL 2872835 (D.S.C. Sept. 2, 2009) (finding that petitioner's petition should be dismissed because (1) his claim "based on Arrington's

---

[16] Dkt.# 8 at 11.

[17] Arrington v. Daniels, 516 F.3d 1106 (9th Cir. 2008) (the APA requires agencies to state a rationale for their decisions, and failure to do so renders the regulation arbitrary and capricious). In his original petition, petitioner also relies on Paulsen v. Daniels, 413 F.3d 999 (9th Cir. 2005). Because Paulsen is not mentioned in his court-approved form petition, it is not addressed here.

[18] It is presumed that petitioner is referring to Crickon v. Thomas, 579 F.3d 978 (9th Cir. 2009), incorrectly cited by petitioner as "Crickon v. United States, 9th Cir. 2008" in his original petition and as "Crickton, 79 F3d 988" in his court-approved form petition.

[19] Dkt.# 8 at 10.

conclusion that §550.58 violated the APA fails because the regulation satisfies the Fourth Circuit's requirement that the agency's rationale be 'reasonably discernible,'" and (2) "the newly adopted §550.55 contains a detailed explanation").

Despite the Supreme Court's 2001 holding in Lopez, in Arrington, in 2008, the Ninth Circuit held that 28 C.F.R. §550.58, Consideration for Early Release, violated APA §706,[20] because it failed to articulate a rational basis, and therefore, was arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law. However, most of the courts outside of the Ninth Circuit, including this district and the Southern District of West Virginia, that have considered the validity of the regulation in light of Arrington have found the decision to be unpersuasive, and have declined to follow it.[21] Further, the Ninth Circuit invalidated the *prior* version of the regulation within their circuit. Here, petitioner is challenging the current regulation by relying on old Ninth Circuit cases invalidating previous version of that regulation.

---

[20] Under §706 of the APA, courts can "hold unlawful and set aside agency action, findings, and conclusions found to [be] arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. §706(2)(A). The Court "must review the agency action based solely on the administrative record 'and determine whether the agency has articulated a rational basis for its decision.'" Crickon, 579 F.3d at 982 (quoting Tablada v. Thomas, 533 F.3d 800, 805 (9th Cir. 2008)).

[21] See Snipe v. Dept. of Justice, No. 3:08-cv-22, 2008 WL 5412868 (N.D. W.Va. April 22, 2009)(Bailey, J.) (declining to follow the Arrington court's reasoning on invalidating the regulations; finding that the Ninth Circuit's decision was incorrect, unpersuasive and not binding); Johnson v. Ziegler, 2009 U.S. Dist. LEXIS 131197 (N.D. W.Va. Apr. 22, 2009)(Keeley, I.)(finding Arrington unpersuasive and declining to follow its holding); Brooks v. Berkebile, 2010 U.S. Dist. LEXIS 92245 (S.D. W.Va. Aug. 16, 2010); Holland v. Fed. Bureau of Prisons, 2009 U.S. Dist. LEXIS 78311 (D.S.C. Sep. 2, 2009)(finding that petition should be dismissed because petitioner's claim "based on Arrington's conclusion that §550.58 violated the APA fails because the regulation satisfies the Fourth Circuit's requirement that the agency's rationale be 'reasonably discernible,'" and "the newly adopted §550.55 contains a detailed explanation and may be applied retroactively"); Frazier v. Berkebile, 2012 U.S. Dist. LEXIS 99737 (S.D. W.Va. June 28, 2012)(Arrington inapposite and District Courts within this Circuit have found that "the decision in Arrington is misguided due to binding precedent from the Supreme Court and the Fourth Circuit); Allen v. United States, 2013 WL 3216043 (S.D. W.Va. 2013)(Arrington decision not binding; BOP's decision to find it inapplicable was permissible and did not violation petitioner's equal protection rights); Harrison v. Lamanna, 19 Fed.Appx. 342 (6th Cir. 2001)(the issue of whether the BOP's decision to exclude the class of persons whose crimes involved firearms was arbitrary and capricious was directly controlled by the Supreme Court's decision in Lopez); Neal v. Grondolsky, 2008 WL 4186901 (D.N.J. Sep. 9, 2008)(rejecting Arrington and finding the issue of arbitrariness and capriciousness to have been settled by Lopez); Gatewood v. Outlaw, 2008 WL 2002650 (E.D. Ark. May 8, 2008)(rejecting Arrington as conflicting with the reasoning of Lopez and finding the regulation valid under §706 of the APA); Minotti v. Whitehead, 584 F.Supp. 2d 750 (D. Md. Oct. 31, 2008)(Arrington decision is unpersuasive and misguided, and distinguishable because it violates the very administrative precept it purports to apply); Hicks v. Fed. Bureau of Prisons, 603 F. Supp. 2d 835 (D.S.C. 2009)("Applying the standard articulated by the Fourth Circuit [that an agency's rationale for its decision be reasonably discernible], the Court concludes that the BOP's rule provides a sufficient rationale for excluding persons convicted under §924(c) from early release consideration."), *aff'd*, 358 Fed. Appx. 393 (4th Cir. 2009), *cert. denied*, ___ U.S. ___, 130 S. Ct. 3442 (2010).

Moreover, here, petitioner fails to allege that any other similarly situated inmate at FCI Gilmer received the benefit of the Arrington decision. Instead, he attempts to satisfy the first step by comparing his own situation, as an inmate incarcerated at FCI Gilmer in West Virginia to an inmate incarcerated in the Ninth Circuit.[22] However, his attempt to claim he is similarly situated to prisoners convicted of precluding offenses who are incarcerated in the 9th Circuit[23] must fail; he is not incarcerated in the 9th Circuit, therefore, he cannot be similarly situated with prisoners who are.

As noted *supra*, the Arrington decision is not persuasive nor is it binding upon this Court. While it may be binding in Ninth Circuit, petitioner is neither completing the RDAP program in the Ninth Circuit, nor is he incarcerated there; thus, he is not similarly situated. Further, he cannot show that he was intentionally singled out for harsher treatment. Thus, the alleged harsh treatment is not an intentional act focused upon him, but is merely the result of his location. Finally, petitioner does not allege that the decision not to apply Arrington was based on any suspect classification.

Accordingly, therefore, the undersigned finds that the BOP's interpretation of Section 3621(e) is reasonable and permissible and petitioner has failed to state a claim for denial of equal protection of the law.

## VI. Recommendation

Based on the foregoing, the undersigned recommends that the respondent's Motion to Dismiss or for Summary Judgment (Dkt.# 13) be **GRANTED** and petitioner's §2241 court-approved form petition (Dkt.# 8) be **DENIED and DISMISSED with prejudice**.

**Within fourteen (14) days** of being served with a copy of this Recommendation, **or by March 11, 2015,** any party may file with the Clerk of the Court, written objections identifying the portions of the Recommendation to which objections are made, and the basis for such objections. A

---

[22] Dkt.# 8 at 11.

[23] Dkt.# 8 at 11.

copy of such objections should also be submitted to the United States District Judge. **Failure to timely file objections to the Recommendation set forth above will result in waiver of the right to appeal from a judgment of this Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); <u>Thomas v. Arn</u>, 474 U.S. 140 (1985); <u>Wright v. Collins</u>, 766 F.2d 841 (4th Cir. 1985); <u>United States v. Schronce</u>, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984).

The Clerk of the Court is directed to mail a copy of this Report and Recommendation to the *pro se* petitioner by certified mail, return receipt requested, to his last known address as shown on the docket sheet. The Clerk of the Court is further directed to provide a copy of this Report and Recommendation to all counsel of record, as applicable, as provided in the Administrative Procedures for Electronic Filing in the United States District Court.

DATED: February 25, 2015

                                          /s/ James E. Seibert
                                          JAMES E. SEIBERT
                                          UNITED STATES MAGISTRATE JUDGE